Florence G. WALTON, et al.,
Respondents,

v.

FUJITA TOURIST ENTERPRISES CO.,
LTD. Defendant,

Pacific Delight Tours, Inc., Respondent,

Northwest Airlines, Inc., Appellant.

No. C5-85-725.

Court of Appeals of Minnesota.

Jan. 14, 1986.

Review Denied March 21, 1986.

Richard T. Wylie, Minneapolis, for respondents, Florence G. Walton, et al.

Michael P. McDonough, Minneapolis, for respondent, Pacific Delight Tours, Inc.

Douglas J. Muirhead, Minneapolis, for appellant, Northwest Airlines, Inc.

Heard, considered, and decided by CRIPPEN, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

CRIPPEN, Judge.

The trial court found defendant Pacific Delight Tours, Inc. 50% negligent, appellant Northwest Airlines, Inc. 30% negligent, and respondent Florence Walton 20% negligent for injuries suffered by Walton while on a familiarization "fam" tour sponsored by Pacific Delight and Northwest Airlines for travel agents. Following a separate trial on damages, judgment was entered declaring the joint liability of Northwest and Pacific Delight for 80% of Walton's damages. Walton and Pacific Delight reached a settlement agreement as to Pacific Delight's portion of the damages. Northwest appeals from the judgment and from the denial of the motion for a new trial. Respondent requests review of the trial court's denial of prejudgment interest. We affirm.

## FACTS

Respondent Walton, a travel agent, fell and injured her ankle on some stairs in a hotel in Japan where she was staying. Walton had gone to Japan in 1976 on a 10-day familiarization trip sponsored jointly by appellant Northwest and defendant Pacific Delight. Fam trips are common in the travel industry; travel agents pay a nominal amount (Walton paid $199), and the airline and tour "wholesaler" provide transportation and accommodations, as well as tours of tourist attractions potentially of interest to travel agency customers. By participating in these fam trips, travel agents such as Walton gain firsthand information about the hotels and tours that they sell to the retail customers.

Walton arranged to go on the trip to Japan by responding to an offer sent to her by Northwest. She signed the document setting forth the itinerary and the terms and conditions of the offer and submitted the required fee. The trial court held that an exculpatory clause contained in that document was unenforceable as against public policy. That clause reads:

Responsibility: The responsibility and liability of Northwest Airlines Inc. (Northwest) is limited to that of a common carrier and arises in connection with this tour only while Northwest is acting as a common carrier. Northwest may act as agent for owners or contractors who provide other transportation or services relating to this tour. All tickets and tour orders are issued subject to the terms, conditions and responsibilities under which such other transportation or other services are offered or provided, and Northwest shall not be liable for any loss, damage, or injury or death relating thereto.

The co-sponsoring of fam trips by Northwest and Pacific Delight began as early as 1971. The firms shared the revenues from the trips and both firms contributed money, property, time, employees, and effort to organize the trips and market them to travel agents. Although it was not introduced into evidence, the two firms also had a written contract regarding the fam trips.

A Northwest employee accompanied the tour group on each trip, and such an employee was on the trip with Walton in Japan. Apart from that employee's presence, however, Northwest's "physical" involvement with the trip itself was limited to the air transportation. The ground transportation, hotel accommodations, sightseeing tours, etc., were all handled by Pacific Delight. In the case of fam trips to Japan, local law required the involvement of a Japanese agency for all the ground activities there. Pacific Delight arranged for this through Fujita Tourist Enterprises, a Japanese corporation. (Because the trial court in this case found no jurisdiction over Fujita, it was involved as a defendant in name only.)

The hotel where Walton's accident occurred had been included by Northwest and Pacific Delight in earlier tours. Although the individual Northwest employee who was on Walton's trip had never been to the hotel before, other Northwest agents had been at the hotel during previous tours. Fujita employees, as Pacific Delight's agents in Japan, had been in the hotel on various occasions.

On the day of her accident, Walton and the other tour members, including the Fujita and Northwest employees, ascended the staircase where Walton later fell down. They had gone up the stairs on the way to the hotel's restaurant. After lunch at the restaurant, Walton returned by herself to look for a bathroom. The stairs were located just on the other side of a door, and Walton fell when she walked through the doorway and slipped on the top step. The evidence indicated the top step was narrower than the others.

Following a trial on the liability issues, the trial court found that Walton's injuries were principally caused by the negligence of all defendants, as joint venturers, due to their failure to provide reasonably safe facilities for the use of their customers. The trial court found that Pacific Delight was 50% negligent, Northwest was 30% negligent, and Walton was 20% negligent for failing to maintain a minimal lookout for such dangers.

A trial on damages followed, and Walton was awarded $100,490.64, reduced by 20% for her negligence, for a net award of $80,392.51, plus interest from the date of the judgment. The trial court denied Walton's posttrial motion for prejudgment interest. Northwest appeals from the judgment and from the order denying a new trial, and Walton seeks review of the trial court's order denying the prejudgment interest.

## ISSUES

1. Did the trial court err in finding the exculpatory clause in the contract to be unenforceable?

2. Did the trial court err in finding the existence of a joint venture between Northwest and Pacific Delight?

3. Did the trial court err in finding Northwest was negligent?

4. Was Northwest deprived of a fair trial because of the trial judge's interruptions during closing arguments?

### ANALYSIS

1. Exculpatory clauses are valid in certain circumstances, but are not favored in the law. *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn.1982). A clause exonerating a party from liability will be strictly construed against the benefited party. If the clause is ambiguous in scope it will not be enforced. *Id.*

In evaluating exculpatory clauses, the courts approach the policy considerations on a case-by-case basis. *Id.* The court in *Schlobohm* adopted a two-prong test for analyzing the policy for a case. First, the court reviews the disparity of bargaining power between the two parties. Second, the court considers the "types of services being offered or provided (taking into consideration whether it is a public or essential service)." *Id.*

The trial court here relied on both parts of the *Schlobohm* test. First, the court stated that the agreement between Northwest and Walton was not bargained for, noting the offer's "by invitation only" quality. The court also noted that the document was prepared unilaterally by Northwest, creating a "take it or leave it" situation. Second, the court stated that participation in such fam trips is necessary for the business success of an agent and that Northwest's size gave it a virtual monopoly on such trips. The court said that the "services tendered were unique and unavailable elsewhere" and were of "practical necessity" to Walton and other travel agents.

The trial court's analysis is compelling. First, the trial court's assessment of the disparity of bargaining power between Walton and Northwest accurately depicts the relationship between travel agents and providers of fam trips. Second, Northwest, a major airline headquartered in the Twin Cities, is the region's primary provider of air trips to the Orient. Travel agents who forego Northwest's trips will not be very able to market the trips to their own customers without some basis upon which to recommend them. Northwest's various services could not be obtained elsewhere.

In addition, the exculpatory clause is ambiguous in scope. It maintains that Northwest "may act as agent for owners or contractors who provide other transportation or services," but subsequently disclaims liability for losses relating to other transportation or services.

For these reasons, we conclude that the trial court properly found the exculpatory clause to be unenforceable.

2. The elements of a joint venture are as follows:

(a) *Contribution*—the parties must combine their money, property, time, or skill in some common undertaking, but the contribution of each need not be equal or of the same nature.

(b) *Joint proprietorship and control* —there must be a proprietary interest and right of mutual control over the subject matter of the property engaged therein.

(c) *Sharing of profits but not necessarily of losses*—there must be an express or implied agreement for the sharing of profits * * * but not necessarily of the losses.

(d) *Contract*—there must be a contract, whether express or implied, showing that a joint adventure was in fact entered into.

*Rehnberg v. Minnesota Homes, Inc.*, 236 Minn. 230, 235–36, 52 N.W.2d 454, 457 (1952). The trial court, using this standard, found that Pacific Delight and Northwest were engaged in a joint venture. On review, this court will overturn the trial court's findings only if they are clearly erroneous. Minn.R.Civ.P. 52.01.

Appellant contends that no joint venture existed because Northwest did not retain the requisite control over the conduct of the tour in Japan and in the hotel where Walton's accident occurred. Northwest points out that it was only in charge of the air transportation for the tour, whereas Pacific Delight had control of the tour while on the ground.

A 1973 case that applied *Rehnberg* defeats Northwest's argument:

> In a joint adventure, the individual defendants are jointly liable as a unit because of their mutual undertaking for a common purpose and their right of direction and control over the enterprise, even though there is no actual physical control or such control was never exercised.

*Krengel v. Midwest Automatic Photo, Inc.*, 295 Minn. 200, 208, 203 N.W.2d 841, 846 (1973). A pre-*Rehnberg* case supports this reasoning. *See Murphy v. Keating*, 204 Minn. 269, 283 N.W. 389 (1939). In *Murphy* the court said:

> There are two elements customarily required by the courts to establish joint enterprise, namely (1) a mutual undertaking for a common purpose, and (2) a right to some voice in the direction and control of the means used to carry out the common purpose.

*Id.* at 273, 283 N.W. at 392.

In *Krengel*, one defendant was the manufacturer of a photo booth, another distributed and installed the photo booths, and another provided the space in its store for the operation of the photo booth. The court found a joint venture, even though the retailer had no say over the manufacturing methods and the distributor had no control over the retail store's hours. As the court there said, "the whole is greater than the sum of its parts. * * * The resulting common duty and joint opportunity to protect customers translates into equal and overall liability." *Krengel*, 295 Minn. at 210, 203 N.W.2d at 847. This reasoning is equally applicable in the present case.

In discussing joint ventures, the Minnesota Supreme Court has said:

> If a party has the right of joint control in the first instance, [they] can delegate it or surrender it in varying degrees to another party in the relationship. Patently, the right must exist before it can be delegated or surrendered.

*Roberts v. Donaldson*, 276 Minn. 72, 81, 149 N.W.2d 401, 407 (1967) (quoting *Hayes v. Killinger*, 235 Ore. 465, 478, 385 P.2d 747, 753 (1963). For the same reasons that led them to become joint venturers, Pacific Delight and Northwest delegated control of specific aspects of the tours to each other. This division of responsibilities does not operate to negate the existence of a joint venture.

■ Moreover, the same witnesses that Northwest relies on here also established that the Northwest employee on the tour did in fact have a "right to some voice in the direction and control of the means used to carry out the common purpose." The employee was free to offer suggestions and to point out dangers or improvements, both to the Fujita and Pacific Delight employees and to the tour members. The employee would also have the right to send a disruptive tour member back to the Twin Cities. All of these facts combine to indicate the presence of a joint venture between Pacific Delight and Northwest, and the trial court's finding was not clearly erroneous.

3. Northwest argues that it had no duty to Walton so that no negligence liability on its part can exist. It says that to create such a duty would make Northwest the insurer of the well being of each and every person who took a tour where Northwest provided air transportation.

■ Walton was a Northwest customer. She went on the tour at the invitation of Northwest. She and Northwest were parties to a contract. Northwest owes her a duty of reasonable care under any of these characterizations of their relationship. Because Pacific Delight and Northwest were involved in a joint venture, liability on the part of one is attributable to the other. *See Krengel*, 295 Minn. at 210, 203 N.W.2d

at 847. This does not mean that Northwest was expected to inspect every hotel and tourist attraction that tour members would visit; that duty was primarily delegated to Pacific Delight and its agent, Fujita Tourist Enterprises. When a coventurer breaches its delegated duty, however, liability incurred by the breach is the joint responsibility of all the coventurers.

In finding Pacific Delight 50% negligent and Northwest only 30% negligent, the trial court recognized the relative proportions of the responsibility each had to the tour members while they were on the ground. The comparative negligence statute in effect at the time provided as follows:

> When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award.

Minn.Stat. § 604.01 subd. 1 (1976). A finding of 30% negligence of Northwest reflects its indirect involvement in ground arrangements. Similarly, in *Krengel,* where the plaintiff was injured when she tripped over a riser in the photo booth, the negligence was apportioned between the three defendants. *See Krengel,* 295 Minn. at 210, 203 N.W.2d at 847.

Here, the trial court's apportionment of responsibility between the three parties was reasonable and not clearly erroneous.

4. Northwest claims the trial court erred by posing several questions to Northwest's attorney during his closing argument at trial. The claim is without merit. A review of the interruptions shows the judge was aggressive in his questioning and probing of the attorney's arguments. In the absence of a jury, this is proper. Rather than working against the parties, this provides the attorneys with an opportunity to present arguments that will persuade the judge on the point being questioned.

Respondent contends she was entitled to prejudgment interest computed from the time her action was commenced. *See* Minn.Stat. § 549.09, subd. 1(b) (1984). We have dealt recently with the statute, although not in cases involving unliquidated general damages on a tort claim. *See L.P. Medical Specialists, Ltd. v. St. Louis County,* 379 N.W.2d 104 (Minn.Ct.App. 1985); *Wilson v. Skogerboe,* 379 N.W.2d 696 (Minn.Ct.App.1986). Having in mind the attention given to this question by the trial court and the absence here of full briefing and argument on the issue, we decline to question the trial court's approach on the subject in the circumstances of this case.

## DECISION

The trial court's findings that a joint venture existed and that Northwest was negligent are not clearly erroneous. The trial court's conclusion that the exculpatory contract was void as against public policy is supported by the facts and the applicable law.

Affirmed.

WOZNIAK, Judge, dissenting.
I respectfully dissent.