**Suzette BUNIA, Appellant,**

v.

**KNIGHT RIDDER, a/k/a St. Paul Pioneer Press and Dispatch, AEW Trust # 60, Respondents.**

No. C7-95-1859.

Court of Appeals of Minnesota.

March 5, 1996.

Norman Hulin, Thomas W. Krauel, White Bear Lake, for appellant.

Michael R. Peterson, Peterson & Ness, Minneapolis, Michael S. Kreidler, Stich, Angell, Kreidler & Muth, Minneapolis, for respondents.

Considered and decided by DAVIES, P.J., and CRIPPEN and KALITOWSKI, JJ.

## OPINION

DAVIES, Judge.

Summary judgment was granted dismissing appellant newspaper carrier's negligence action against respondent newspaper on the ground that her independent contractor agreement with newspaper included an exculpatory clause by which the carrier agreed to hold the newspaper harmless for its injury to the carrier, even including injury arising from the newspaper's own negligence.

We reverse, holding the exculpatory clause unenforceable as against public policy.

## FACTS

Appellant Suzette Bunia, while working as a newspaper carrier for respondent Knight Ridder, a/k/a St. Paul Pioneer Press and Dispatch (Pioneer Press), slipped and fell at the Pioneer Press's distribution center, allegedly on packed snow and ice. When she fell, she was wheeling a dolly stacked with newspapers for her route. She sued the Pioneer

Press for negligently failing to clear the snow and thus causing her injuries.

When she became a newspaper carrier, the Pioneer Press required Bunia to sign an "Independent Contractor Distribution Agreement," which included the following clause:

> The Contractor [Bunia] agrees to defend, indemnify, and hold the Company [Pioneer Press] harmless from * * * any claim, loss, damage, or injury to the person or property of the Contractor [Bunia] * * *.

The district court granted summary judgment against Bunia, holding that the clause bars her claim.[1]

## ISSUE

Can the "hold harmless" clause validly bar suit against the newspaper for its alleged negligent injury to its carrier?

## ANALYSIS

■ This court must consider two questions on appeals of summary judgment:

> (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law.

*State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

Bunia challenges the exculpatory clause, as unenforceable, claiming that it: (1) is contrary to public policy because it results from a disparity of bargaining power, (2) does not expressly cover the Pioneer Press's own negligence, and (3) is ambiguous in construction and scope.

■ To uphold the clause against the public policy claim, the Pioneer Press relies on *Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920 (Minn.1982). The rule of *Schlobohm* is that an exculpatory agreement violates public policy only if there is a disparity in bargaining power between the parties and, in the conjunctive, the types of services being offered are public or essential services. *Id.* at 923. The Pioneer Press argues that the district court properly found that the invalidating conditions are not present.

The reasoning and rule of *Schlobohm* do apply here. But we hold the invalidating conditions it establishes are, as a matter of law, present in this case.

The issue in *Schlobohm* was whether a contractual assumption of risk by a customer of a health spa was valid. *Id.* at 921. The Minnesota Supreme Court (by a 5 to 4 vote) held the clause valid. *Id.* at 926. The court thus rejected a negligence claim arising when a spa employee recommended that a client exercise with an excessive weight. *Id.* In effect, the court held that the client had, by contract, validly assumed the risk of such an employee mistake.

In coming to that conclusion, the supreme court majority noted a New York Court of Appeals decision stating that a health club member who "voluntarily applied for membership in a private organization, and agreed to the terms upon which this membership was bestowed * * * may not repudiate" those terms. *Id.* (quoting *Ciofalo v. Vic Tanney Gyms, Inc.,* 10 N.Y.2d 294, 220 N.Y.S.2d 962, 177 N.E.2d 925, 927 (1961)). The *Schlobohm* majority found that the plaintiff in the case before it likewise contracted to assume the risks that went along with being a health club member:

> It should have been obvious to anyone of [the plaintiff's] age, education and experience that an exercise program in a gymnasium bears with it a certain risk of injury, and that by the exculpatory clause Spa Petite indicated clearly that it was unwilling to shoulder that risk for the relatively nominal membership fee it charged its members.

*Id.* at 925.

Exculpatory clauses of this type are usually looked upon as being in the nature of a

---

1. The validity of the quoted provision's deleted parts are not at issue. The deleted portions (which surround the clause at issue here) require Bunia to protect the newspaper from third-party claims, described as,

    any and all liabilities, claims, demands, suits, costs, charges, and expenses incident to any claim made against the Company arising out of Contractor's [Bunia's] obligation under this Agreement; * * * or [from injury] to the person or property of anyone injured through the acts or omissions of the Contractor or of Contractor's agents, employees, or other person acting on the Contractor's behalf * * *.

The paragraph then requires Bunia to "carry sufficient liability insurance to * * * satisfy the obligation hereunder."

contractual (or express) assumption of risk. *See* Restatement (Second) of Torts § 496B cmt. a (1965) ("[t]he risk of harm from the defendant's conduct may be assumed by express agreement between the parties."); see also *Coates v. Newhall Land & Farming, Inc.,* 191 Cal.App.3d 1, 236 Cal.Rptr. 181, 182 (1987)("contractual assumption of risk" eliminates a defendant's liability for otherwise tortious conduct "if (1) the contract is not against public policy and (2) the risk * * * is inherent in the activity"), *review denied* (Cal. July 1, 1987); *Finkler v. Toledo Ski Club,* 63 Ohio App.3d 11, 577 N.E.2d 1114, 1118 (1989) (contractual assumption of risk is "an agreement that one party does not owe a duty of ordinary care to the other party").

Notwithstanding *Schlobohm,* the law often takes a dubious view of exculpatory agreements establishing a contractual assumption of risk between the contracting parties—that is, for first-party claims. For example, this court found invalid an exculpatory agreement between a travel agent and an airline in *Walton v. Fujita Tourist Enters.,* 380 N.W.2d 198, 203 (Minn.App.1986), *review denied* (Minn. March 21, 1986). In *Walton,* a travel agent accepted Northwest airline's offer for a "familiarization tour" to Japan. *Id.* at 199–200. In accepting the offer, the travel agent signed a document containing an exculpatory clause that limited the airline's liability for loss, damage, injury, or death to the travel agent. *Id.* at 200.

The travel agent fell down a staircase while on the tour and sued both the airline and the tourist agency that sponsored the trip for their failure to provide reasonably safe facilities. *Id.* The trial court held that the exculpatory agreement did not bar the agent's suit, and this court agreed that the clause was invalid, in part because of the disparity in bargaining power between the airline (which had a near monopoly on such trips) and the travel agent (who signed the document on a "take it or leave it" basis). *Id.* at 201.

█ Such clauses are almost universally rejected in the employment context, where exculpatory agreements "exempting an employer from all liability for negligence toward his employees [are] void as against public policy." W. Page Keeton et. al., Prosser and Keeton on the Law of Torts § 68, at 482 (5th ed.1984).

> Where the defendant and the plaintiff are employer and employee, and the [assumption of risk] agreement relates to injury to the employee in the course of his employment, the courts are generally agreed that it will not be given effect. The basis for such a result usually is stated to be the disparity in bargaining power and the economic necessity which forces the employee to accept the employer's terms, with the general policy of the law which protects him against the employer's negligence and against unreasonable contracts of employment.

Restatement (Second) of Torts § 496B cmt. f (1995); *see also White v. Village of Homewood,* 256 Ill.App.3d 354, 195 Ill.Dec. 152, 155, 628 N.E.2d 616, 619 (1993) ("[e]xculpatory agreements that are contrary to public policy include those * * * between an employer and employee"), *appeal denied* 155 Ill.2d 577, 198 Ill.Dec. 554, 633 N.E.2d 16 (1994); *Pittsburgh, C., C. & St. L. Ry. v. Kinney,* 95 Ohio St. 64, 115 N.E. 505, 510–11 (1916) (employment contract that limits any legal duty that the employer owes to the employee with respect to safety or health of the latter, is void as contrary to public policy).

█ When she agreed to the clause at issue here, Bunia was in circumstances nearly identical to that of an employee. Although the law generally treats independent contractors differently from employees, the disparity in bargaining power between Bunia, a newspaper carrier, and the Pioneer Press, a major newspaper publisher, is comparable to—if not greater than—that of most employers and employees. And her need to obtain a source of income—albeit as an independent contractor—is parallel to that of an employee. Bunia contracted for a consideration (income) that was essential, not discretionary, to her, and she assented to the exculpatory clause from a position of inferior bargaining power. Her contractual assumption of risk was thus invalid.

The parties argued this case not as a contractual assumption of risk, but, rather, as if

the clause were a simple predetermination between them as to who is to bear the cost when injuries to third parties arise out of their business relationship. We find that analysis off the mark, but helpful nonetheless.

Such provisions are common in commercial contracts and are often upheld. Daniel S. Kleinberger, *No Risk Allocation Need Apply: The Twisted Minnesota Law of Indemnification,* 13 Wm. Mitchell L.Rev. 775, 777–80 (1987). Nonetheless, "the particular type of risk allocation provided by indemnification agreements has come to face increasing hostility." *Id.* at 778. Indeed, Professor Kleinberger stated that while "[o]ther states have * * * placed restrictions on indemnification agreements, * * * Minnesota law is by far the most restrictive." *Id.* at 779 n. 9.

An example of this restrictiveness can be seen in our legislature's limitation on the enforceability of indemnification contracts in the context of construction work. *See* Minn. Stat. §§ 337.01–.06 (1994). Under Minn.Stat. § 337.02,

> [a]n indemnification agreement contained in, or executed in connection with, a building and construction contract is unenforceable except to the extent that the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the promisor [i.e., the one who, by the agreement, promises to indemnify the other party] or the promisor's independent contractors, agents, employees, or delegatees.

The parties here agreed to a standard indemnification clause: It is in the contractual provision reproduced in footnote one. That part of the exculpatory clause is limited to third-party claims,[2] but even with that limitation, such clauses still face severe hostility. As our holding demonstrates, we are reluctant to let parties contractually invade tort law to undermine its deterrent and compensatory objectives.

2. One aspect of the parties' relationship as to third-party claims was Bunia's obligation to purchase liability insurance covering injuries resulting from the newspaper's and her combined endeavors. Such insurance would have provided

**DECISION**

The exculpatory clause is void as against public policy and does not bar Bunia's negligence suit. We find it unnecessary to reach her alternative claims.

**Reversed.**

third-party claimants access to an insurance pool, but Bunia herself, as a named insured, would not, if injured, have had access to that required insurance coverage.