Tamera **BEEHNER**, Appellant,

v.

**CRAGUN CORPORATION,**
Respondent,

**Outback Trail Rides, Inc., Respondent.**

No. C3–01–640.

Court of Appeals of Minnesota.

Dec. 11, 2001.

Richard A. Williams, Jr., Williams & Iversen, P.A., Roseville, MN, for appellant.

Jerome R. Klein, Candlin & Heck, Bloomington, MN, for respondent Cragun Corporation.

Robert G. Haugen, Johnson & Lindberg, P.A., Minneapolis, MN, for respondent Outback Trail Rides, Inc.

Considered and decided by ANDERSON, Presiding Judge, PETERSON, Judge and AMUNDSON, Judge.

## OPINION

### G. BARRY ANDERSON, Judge.

Appellant Tamera Beehner, injured during a horseback trail ride, challenges the district court's grant of summary judgment to ride operator Outback Trail Rides and to Cragun's resort, from whom appellant purchased a ticket for the ride. Appellant argues that the trial court (1) erred by finding an exculpatory agreement, releasing Outback from liability for ordinary negligence, enforceable; (2) erred by failing to submit the issue of Outback's greater-than-ordinary negligence to a jury; (3) abused its discretion by refusing to grant a continuance so that she could complete discovery; and (4) erred by finding that respondent Cragun and respondent Outback were not engaged in a joint enterprise or a joint venture. Given that the exculpatory clause was enforceable, that appellant had ample time to conduct discovery before the summary judgment hearing, and that no evidence submitted indicates a joint enterprise between respondents Cragun and Outback, we affirm on those issues. Because there are issues of material fact as to whether respondent Outback's conduct was greater-than-ordinary negligence, we reverse and remand for a jury trial on that issue.

## FACTS

On August 14, 1998, appellant Tamera Beehner checked into Cragun's, a resort owned and operated by respondent Cragun. Shortly thereafter, appellant purchased a ticket from Cragun's to go on a guided horseback ride the following morning. Respondent Outback Trail Rides organized and conducted the ride. Appellant charged the ticket to her Cragun's bill. The following day, Cragun's transported appellant to the ride site.

At the site, Outback required appellant to sign a "Horse Rental Agreement and Liability Release Form for Individuals." The contract read, in part:

Liability Release. I AGREE THAT: In consideration of THIS STABLE allowing my participation in this activity, under the terms set forth herein, I, the rider, for myself and on behalf of my child and/or legal ward, heirs, administrators, personal representatives or assigns, do agree to hold harmless, release and discharge THIS STABLE, its owners, agents, employees, officers, directors, representative, assigns, members, owners of premises and trails, affiliated organizations, insurers, and others acting on its behalf (hereinafter collectively referred to as "ASSOCIATES"), of and from all claims, demands, causes of action and legal liability, whether the same be known or unknown, anticipated or unanticipated, due to THIS STABLE's and/or ITS ASSOCIATES' ordinary negligence; and I do further agree that except in the event of THIS STABLE's gross negligence and willful and wanton misconduct, I shall not bring any claims, demands, legal actions and causes of

action, against THIS STABLE and ITS ASSOCIATES as stated above in this clause, for any economic and non-economic losses due to bodily injury, death, property damage sustained by me and/or my minor child and/or legal ward in relation to the premises and operations of THIS STABLE to include riding, handling or otherwise being near horses owned by or in the care, custody and control of THIS STABLE, whether on or off the premises of THIS STABLE.

Before the ride began, appellant heard an Outback employee refer to a dog standing near the horses as Outback's "new adopted dog." The dog accompanied the horses as the ride began, despite attempts by Outback employees to make the dog return. On the trail, a horse, not appellant's, stepped on the dog. Shortly thereafter, appellant's saddle girth loosened, and her saddle began to slip. To keep from falling, appellant rode her horse next to a tree, which she leaned against for support as she called out to the guide for assistance. As appellant held onto the tree, the dog approached and frightened appellant's horse, which shied and threw appellant to the ground, permanently injuring her foot and leg.

On April 26, 2000, appellant filed a complaint against Outback and Cragun, alleging negligence in the operation of the trail ride. Appellant served discovery requests on Outback on the same day, but Outback did not respond to the requests until late October, 2000. On November 10, 2000, Outback moved for summary judgment, alleging that the exculpatory agreement released it from any liability arising from its alleged negligence related to the operation of the trail ride. Cragun joined Outback's motion on the ground that no joint venture or joint enterprise existed between them sufficient to extend Outback's potential liability to Cragun. The

district court granted summary judgment in favor of Outback and Cragun. The district court found that the release was enforceable; that no issues of material fact existed as to Outback's alleged gross negligence; that the action was ripe for summary judgment without further discovery; and that Cragun's could not be held liable for Outback's alleged negligence.

This appeal followed.

### ISSUES

I. Did the district court err by finding that an exculpatory clause, signed by appellant and releasing Outback from ordinary negligence liability arising from the operation of the trail ride, was enforceable?

II. Did the district court err by granting summary judgment and concluding as a matter of law that there were no material facts in dispute concerning Outback's greater-than-ordinary negligence?

III. Did the district court abuse its discretion by refusing to grant appellant's request for a continuance to conduct further discovery?

IV. Did the district court err by finding as a matter of law that respondent Outback and respondent Cragun were not involved in a joint venture or a joint enterprise?

### ANALYSIS

On appeal from summary judgment, we must determine whether there are any material issues of fact and whether the district court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). When reviewing summary judgment, this court views the evidence in the light most favorable to the

party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). If we find that material issues of fact need to be determined, we must remand the case to the district court without deciding the legal issues. *Caledonia Cmty. Hosp. v. Liebenberg Smiley Glotter & Assocs.*, 308 Minn. 255, 258–59, 248 N.W.2d 279, 281 (1976).

## I.

Appellant challenges the district court's conclusion that her claim is barred by the exculpatory clause, which appellant claims is unenforceable as against public policy.

■ Minnesota recognizes the validity of exculpatory clauses, but they are disfavored and "strictly construed against the benefited party." *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn.1982). An exculpatory clause may be unenforceable if (1) it is ambiguous in scope or purports to release a party from liability for intentional, willful, or wanton acts; (2) there was a disparity of bargaining power between the parties to the agreement; or (3) the type of service being offered or provided by the exculpated party is either a public or an essential service. *Id.* at 923.

■ An exculpatory clause is ambiguous when it is susceptible to more than one reasonable construction. *See Collins Truck Lines, Inc. v. Metro. Waste Control Comm'n*, 274 N.W.2d 123, 126 (Minn.1979). Appellant argues that the portion of the exculpatory clause releasing Outback from liability for ordinary negligence is ambiguous and overbroad because it is not limited to negligence related to the premises and operations of the stable. Instead, appellant argues, the clause purports to encompass negligent acts committed by Outback employees any time and anywhere. The exculpatory clause is one sentence long. Appellant's interpretation disregards the second half of the sentence, which contains language limiting the scope of exculpation.

> [P]hrases found in a contract should not be interpreted out of context, but rather * * * given a meaning in accordance with the obvious purpose of the * * * contract as a whole.

*Kauffman Stewart, Inc., v. Weinbrenner Shoe Co.*, 589 N.W.2d 499, 502 (Minn.App. 1999) (quotation omitted) (second ellipsis in original).

■ The exculpatory clause is not susceptible to more than one reasonable interpretation. Appellant's interpretation unreasonably isolates one part of the clause and disregards the obvious purpose of the clause as a whole, which is to release respondent Outback from liability for ordinary negligence arising from the stable premises and operations. The exculpatory clause is neither overbroad nor ambiguous in scope; nor does it purport to release Outback from greater-than-ordinary negligence.

■ Appellant argues in the alternative that the exculpatory clause is unenforceable because there was a disparity of bargaining power between herself and respondent Outback. A disparity of bargaining power in a liability release may exist where the services provided are necessary or unavailable elsewhere; where there is a compulsion to participate in the activity; and where there is no opportunity to negotiate the terms of the exculpatory agreement. *Malecha v. St. Croix Valley Skydiving Club, Inc.*, 392 N.W.2d 727, 730 (Minn.App.1986), *review denied* (Minn. Oct. 29, 1986).

■ We can find no Minnesota case holding that a liability release in a contract for recreational activity was unenforceable due to a disparity of bargaining power. *See Schlobohm*, 326 N.W.2d at 925 (health club membership); *Malecha*, 392 N.W.2d

at 730 (skydiving lessons). Horseback riding is not a necessary activity, and the record does not suggest that Outback's services were unavailable elsewhere. Appellant was not compelled to participate in the trail ride; she was a voluntary participant. *See Schlobohm*, 326 N.W.2d at 925 (finding no disparity in bargaining power where plaintiff "voluntarily applied for membership in [the health club] and acceded to the terms of membership"); *Malecha*, 392 N.W.2d at 730 (finding no compulsion when skydiver "had the choice to either make the jump subject to the Skydiving Club's rules or to forego it").

▇▇▇ Appellant argues that she was forced to accept the release on a "take it or leave it" basis just before beginning her ride. But "[p]roof that [appellant] had no opportunity to negotiate the terms of [an] exculpatory agreement is not enough to show a disparity of bargaining power." *Malecha*, 392 N.W.2d at 730. Appellant's reliance on *Bunia v. Knight Ridder*, 544 N.W.2d 60 (Minn.App.1996), *review denied* (Minn. May 9, 1996), and *Walton v. Fujita Tourist Enters. Co.*, 380 N.W.2d 198 (Minn.App.1986), *review denied* (Minn. Mar. 21, 1986) is misplaced. In these cases, plaintiffs were compelled to sign exculpatory clauses in agreements to obtain services or consideration necessary to their livelihoods. *See Bunia*, 544 N.W.2d at 63 (invalidating exculpatory clause in newspaper carrier's contract with newspaper where consideration (income) was essential and where carrier assented to clause from a position of inferior bargaining power); *Walton*, 380 N.W.2d at 201 (invalidating exculpatory clause in familiarization trip contract between travel agent and airline organizing trip due to disparity of bargaining power where airline had virtual monopoly on such trips, and where services provided were unique, unavailable elsewhere, and of a practical professional

necessity to travel agents). There was no similar disparity of bargaining power between appellant and Outback.

▇▇▇ Appellant argues that the district court erred by determining that horseback riding is not a necessary or public service. A necessary or public service, for the purpose of interpreting exculpatory clauses, is a service subject to public regulation or of practical necessity for some members of the public. *Schlobohm*, 326 N.W.2d at 925–26. Relying on *Walton* and *Bunia*, appellant argues that the district court erred by not recognizing that horseback riding was of a practical necessity to her as an individual. But the contracts in *Walton* and *Bunia* were related to the plaintiffs' livelihoods. *See Bunia*, 544 N.W.2d at 63; *Walton*, 380 N.W.2d at 201. Here, the contract is for recreational services, which were not necessary to appellant.

Respondent Outback does not provide a service typically thought suitable for public regulation, as do, for instance, common carriers, hospitals, doctors, and employers. *Schlobohm*, 326 N.W.2d at 925. In *Schlobohm*, the supreme court cited a Tennessee case for the proposition that renting horses and saddles is not a public service. *Id.* at 926 (citing *Moss v. Fortune*, 207 Tenn. 426, 340 S.W.2d 902 (1960)). Appellant has failed to show that the exculpatory clause implicates a public or essential service.

Because the exculpatory clause is not ambiguous, not the result of a disparity in bargaining power, and not for a public or essential service, the clause is enforceable as consistent with public policy.

▇▇▇ Next, appellant argues that the exculpatory clause is unenforceable for lack of consideration because the release was not presented to her at the time she paid for the trail ride. The release, appel-

lant claims, is not a modification to the original contract, but an additional, independent contract that stands alone and must be supported by independent consideration. Respondent argues that the release is a modification to the original agreement and that a contract modification does not require new consideration if it is made while the contract is still executory and there has been no breach.

This court has held that an exculpatory agreement signed after a fee to participate in a recreational activity has been paid is part of the same transaction and is therefore enforceable without additional consideration other than permission to participate in the activity. *Malecha*, 392 N.W.2d at 731. In *Malecha*, the plaintiff paid the fee for five hours of skydiving lessons and a parachute jump. *Id.* at 728. Just before the jump, he signed a release. This court wrote that .

> regardless of when the agreement was given to Malecha to sign, it is supported by adequate consideration. * * * Malecha paid a course fee and waived his right to sue the Skydiving Club for its negligence in exchange for the training course and the opportunity to sky jump. We do not consider that the exculpatory agreement was a separate transaction requiring additional consideration.

*Id.* at 731 (citation omitted). The situation here is identical to *Malecha*. The exculpatory agreement signed by appellant is supported by consideration and enforceable.

## II.

■ Appellant argues even if the release shields Outback from liability for ordinary negligence, respondent Outback's negligence was gross, or wanton and willful. Outback, therefore, cannot be released. Appellant contends that respondent Outback's conduct relating to the presence of the dog on the trail ride and

her slipping saddle during the ride constituted greater-than-ordinary negligence, and therefore creates genuine issues of material fact precluding summary judgment. In a dispute over the applicability of an exculpatory clause, summary judgment is appropriate only when it is uncontested that the party benefited by the exculpatory clause has committed no greater-than-ordinary negligence. *See Arrowhead Elec. Coop. v. LTV Steel Mining Co.,* 568 N.W.2d 875, 880 (Minn.App. 1997) (remanding for trial where issue of material fact existed as to willful conduct of party benefited by exculpatory clause). Thus, summary judgment is appropriate here only if Outback's conduct does not, as a matter of law, rise to the level of gross negligence or wanton and willful misconduct.

■ Gross negligence is "very great negligence or absence of even slight care, but [it is] not equivalent to wanton and willful" conduct. *Ackerman v. Am. Family Mut. Ins. Co.,* 435 N.W.2d 835, 840 (Minn.App.1989) (quotation omitted). Willful and wanton conduct is the failure to exercise ordinary care after discovering a person or property in a position of peril. *See Bryant v. N. Pac. Ry. Co.,* 221 Minn. 577, 585, 23 N.W.2d 174, 179 (1946).

Appellant presents sufficient evidence to create a material issue of fact concerning whether respondent Outback's conduct in allowing the dog to accompany the horseback riders was grossly negligent or willful and wanton misconduct. The release states that "domestic animals" can "scare a horse, cause it to fall, or react in some other unsafe way," indicating that Outback was aware of the risk created by a dog's presence close to the horses. Appellant heard an Outback employee refer to the dog as "our new adopted dog" and witnessed Outback employees attempt unsuccessfully to prevent the dog from accompa-

nying the riders. The record reflects that the dog was not removed from the trail until it had been stepped on by another horse and caused appellant's horse to throw her to the ground. A jury could reasonably conclude that Outback's failure to remove the dog, an acknowledged risk to the riders' safety, from the proximity of the horses constituted greater-than-ordinary negligence.

Relying on *Malecha*, the district court held that appellant's accident fell within the scope of the release, because falling off a horse is precisely the kind of accident that happens while horseback riding. *See Malecha*, 392 N.W.2d at 731 (holding accidents involving an integral aspect of an activity are presumptively within the scope of a release governing the activity). Appellant convincingly distinguishes *Malecha*, arguing that in *Malecha*, the issue was whether the release covered the kind of accident that occurred. Here, appellant argues, the issue is whether the release covers the degree of respondent Outback's negligence. We agree.

Appellant acknowledges that the risk created by the dog was of the type contemplated by the release, which specifically mentions the risk created by domestic animals. Appellant also recognizes that the dog's presence on the trail would be within the release's scope if due to Outback's ordinary negligence in failing to keep a stray dog not under Outback's control away from the horses. But appellant argues that the degree of Outback's negligence with respect to the dog was greater than ordinary and is therefore outside the scope of the release. Outback had apparent control over the dog, knew the risk the dog posed to the riders' safety, and nonetheless allowed the dog to accompany the riders. Given these facts, viewed in the light most favorable to appellant, a jury could reasonably find that Outback com-

mitted greater-than-ordinary negligence by allowing the dog to accompany the horses.

■■■ Because there is an issue of material fact concerning whether respondent Outback's failure to restrain the dog constituted greater-than-ordinary negligence and whether, therefore, this conduct was within the scope of the exculpatory clause, the district court erred in granting summary judgment on this issue.

■■■ Appellant also alleges that Outback committed greater-than-ordinary negligence when it failed to prevent appellant's saddle from slipping and when it failed to tell appellant her guide's name, making it impossible for appellant to get the guide's attention when appellant's saddle began to slip.

The risk of saddle slippage is contemplated by the release, which provides that "[s]addle girths * * * may loosen during a ride" and advises riders to notify the guide if the girths loosen. But unlike the dog risk, there is no issue of material fact with respect to Outback's degree of negligence involving the saddle slippage. The record contains no evidence that Outback's conduct in contributing to the risk posed by the slipping saddle was greater-than-ordinary negligence. Nor does the record show that appellant's ignorance of the guide's name effectively prevented her from getting the guide's attention. The district court appropriately granted summary judgment on the saddle issue.

### III.

■■■ Appellant challenges the district court's refusal to continue the hearing on respondents' summary judgment motion. Appellant requested the continuance to conduct further discovery and argued that Outback moved for summary judgment after withholding discovery for an unreason-

able period of time, making it impossible for appellant to develop material factual issues necessary to oppose the motion. Outback concedes that it was late in responding to appellant's discovery requests, but argues that appellant had ample time to conduct discovery in the two months between Outback's responses and the summary judgment hearing.

The district court made no findings on this issue, but did not defer its decision or grant a continuance.

Absent an abuse of discretion, the district court's decision whether to continue a summary judgment motion to permit further discovery will not be reversed on appeal. *Cherne Contracting Corp. v. Wausau Ins. Cos.*, 572 N.W.2d 339, 346 (Minn.App.1997), *review denied* (Minn. Feb. 19, 1998). In general, district courts should grant continuances liberally, particularly if the party opposing summary judgment had insufficient time to complete discovery; only "the most extreme circumstances" justify a denial. *Rice v. Perl*, 320 N.W.2d 407, 412 (Minn.1982) (quotation omitted). A district court may grant a continuance (1) if the party requesting the continuance has been diligent in obtaining and seeking discovery prior to requesting the continuance; and (2) if the party seeking the continuance has a good-faith belief that material facts will be uncovered. *Id.*

The record suggests that appellant was not diligent in pursuing discovery prior to requesting the continuance. Appellant served discovery and her complaint on respondent Outback on April 26, 2000. Appellant received no response from respondent Outback until October 30, 2000, despite repeated requests and a threat to move to compel production. Outback served the motion for summary judgment on November 10, 2000. The court heard the summary judgment motion on January 8, 2001.

The record reasonably supports the conclusion that Outback's conduct during discovery was dilatory, provocative, and intended to impede appellant's attempt to develop her case. But the appropriate focus under *Rice* is on appellant's diligence, not respondent's lack thereof. The record suggests that appellant made no effort, between the time Outback served its discovery in early November, 2000, and the date of the summary judgment hearing (January 8, 2001), to conduct further discovery. The record does not indicate that appellant attempted to take depositions or conduct any other form of discovery during this time. Appellant did not ask for a continuance until December 28, 2000, nearly two months after receiving discovery from Outback.

Appellant believed, apparently in good faith, that material facts concerning the interpretation of the exculpatory clause, and the degree of Outback's negligence, would be uncovered by further discovery. But contract interpretation is a question of law, not fact, and it is not clear how additional discovery would have developed material facts relevant to interpreting the exculpatory clause.

Appellant attributes her failure to pursue discovery before requesting a continuance wholly to Outback's delay in responding to appellant's initial discovery requests. But appellant offers no reason why this delay prevented her from conducting discovery between early November 2000, when she received Outback's discovery, and January 8, 2001, when the summary judgment motion was heard.

Outback failed to cooperate with discovery, but the appropriate remedy to this failure is to make a motion to compel discovery. Put most simply, appellant did not diligently address respondent Out-

back's alleged abuse of the discovery process.

We therefore conclude the district court did not abuse its discretion by denying appellant's request for a continuance. *See Gradjelick*, 627 N.W.2d at 715 (upholding district court's refusal to grant continuance for further discovery where appellants failed to attempt to take depositions over a five-month period).

IV.

■ Appellant argues the district court erred by finding that the release entitled respondent Cragun to any legal benefit accorded respondent Outback. Appellant argues that Outback and Cragun were engaged in a joint venture or a joint enterprise and that Cragun is therefore liable for any negligence committed by Outback.

■ Courts apply the joint venture or joint enterprise doctrine "when necessary to impute negligence between two entities that otherwise have no legal relationship." *Stelling v. Hanson Silo Co.*, 563 N.W.2d 286, 290 (Minn.App.1997) (citation omitted). Whether a joint venture or a joint enterprise exists is a question of law, which this court reviews de novo. *See Weber by Sanft v. Goetzke*, 371 N.W.2d 611, 616 (Minn.App.1985), *review denied* (Minn. Sept. 16, 1985).

Here, appellant has the burden of proving a joint enterprise or a joint venture between Outback and Cragun. *See Rehnberg v. Minn. Homes, Inc.*, 236 Minn. 230, 234–37, 52 N.W.2d 454, 457–58 (1952); *Dang v. St. Paul Ramsey Med. Ctr., Inc.*, 490 N.W.2d 653, 657–58 (Minn.App.1992), *review denied* (Minn. Dec. 15, 1992);

■ A joint venture exists where there is (1) contribution of resources by both parties; (2) joint proprietorship and control over the subject matter of the property engaged in the venture; (3) shar-

ing of profits by express or implied agreement; and (4) an express or implied contract showing joint venture. *Powell v. Trans Global Tours, Inc.*, 594 N.W.2d 252, 256 (Minn.App.1999). A joint enterprise exists where there is (1) a mutual undertaking for a common purpose and (2) a right to a voice in the direction and control of the means used to carry out the common purpose. *Id.*

Appellant argues that Cragun and Outback both contributed time, skill, money, and property to the trail-ride venture; that they had an express or implied contract; and that they shared profits. Respondent Cragun argues that there was no joint venture because Outback owned all the horses and equipment, hired the employees, and conducted the rides. We agree.

By an arrangement between Cragun and Outback, Cragun's guests purchased tickets from Cragun for trail rides conducted by Outback. The charge for the rides appeared on the guests' Cragun's bill. Cragun's presumably then paid Outback. Cragun transported the guests to the Outback site.

There is no evidence in the record that Cragun had any control or direction over the horses, the trails, the guides, or any other aspect of Outback's business. Some level of joint control is required to satisfy the second element of both the joint venture and the joint enterprise tests. *See id.* (finding tour operator not liable for hotel's negligence under joint venture or joint enterprise theories where hotel and operator exerted no control over each other's business).

**DECISION**

The district court did not err by finding that the exculpatory clause signed by appellant before her horse ride was enforce-

able as consistent with public policy and supported by consideration. The district court did not abuse its discretion by refusing to grant appellant's request for a continuance of the summary judgment motion. The district court did not err by finding that no joint venture or joint enterprise relationship existed between respondent Outback and respondent Cragun. We therefore affirm on these issues. But we conclude that appellant established a genuine issue of material fact sufficient to defeat summary judgment as to whether Outback's conduct in permitting the dog to accompany the riders was greater-than-ordinary negligence. Accordingly, we reverse the district court and remand this issue for trial.

**Affirmed in part, reversed in part, and remanded.**