**ROBERT W. CARLSTROM COMPANY, INC.,**
Respondent,

v.

**GERMAN EVANGELICAL LUTHER-AN ST. PAUL'S CONGREGATION OF THE UNALTERED AUGSBURG CONFESSION AT JORDAN,** Scott County, Minnesota, Appellant.

No. C3–02–1328.

Court of Appeals of Minnesota.

June 3, 2003.

Larry D. Martin, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, MN, for appellant.

Kenneth R. White, Law Office of Kenneth R. White and John W. Riedy, Maschka, Riedy & Ries, Mankato, MN, for respondent.

Considered and decided by ANDERSON, Presiding Judge, SCHUMACHER, Judge, and WILLIS, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Both parties to this contractual dispute allege the district court decision following a bench trial was in error. Appellant contends that the district court erred in finding that the contract did not require respondent to provide written notice of a concealed or unknown condition. Both parties contest the district court's damage award. Appellant also argues the district

court abused its discretion by not awarding attorney fees. We affirm.

## FACTS

In 1997, appellant German Evangelical Lutheran St. Paul's Congregation of the Unaltered Augsburg Confession at Jordan began exploring a roof-reconstruction project. Prior to bidding, interested contractors were allowed to inspect portions of the roof. But appellant, fearing that the cost to replace the roof might be more than it could afford, and in an effort to minimize the damage to the attic area if the project did not proceed, refused to remove attic insulation, thus denying access to a substantial portion of the roof. In fact, appellant refused to allow its own architect access to the entire roof while he was preparing the plans for the project. Following a competitive bidding process, respondent Robert W. Carlstrom Company, Inc. was awarded the contract, valued at $213,900.

Respondent's crew began removing the old roof on May 6, 1998, and was surprised by the poor condition of the roof. Although respondent expected to find bird-mouth cuts[1] in the framing, the unusual depth of the cuts was not expected. At first respondent believed that the cuts were merely inconvenient, but as the project progressed, respondent determined that the depth of these cuts seriously threatened the structural integrity of the roof. Respondent quickly concluded, because of the depth of the bird-mouth cuts and the roof's bizarre blocking and framing, that additional work, material, and labor would be required.

Respondent contacted the architect and verbally reported the unusual condition of the roof. On May 22, 1998, after determining it would need to do additional work respondent immediately verbally notified appellant of the problem. Respondent again verbally reported the condition of the roof, this time on May 27, to appellant's building committee and also outlined the expected delays and additional costs necessary to correct the conditions. At a building committee meeting in July, appellant requested that respondent submit one request for additional funds, as opposed to several incremental requests. Work continued on the roof from May until project completion in August.

In August, respondent submitted a "change order request" seeking an additional $51,680.94. This detailed break down of the additional costs was the first time respondent had submitted any kind of written documentation about the unknown condition of the roof. Appellant's architect concluded that the condition of the roof constituted a concealed or unknown condition and recommended that appellant pay the additional funds. Appellant refused to make the additional payment, claiming that respondent was required under the contract to submit written notice of the concealed or unknown conditions.

Respondent and appellant both allege breach of contract. Appellant alleged that respondent failed to complete all the work it was obligated to perform, and respondent contended that it was not paid the money it was owed for the extra work it performed. Appellant also alleged violation of Minnesota's consumer-protection statute and sought reimbursement for project-completion costs. Appellant asserted also that respondent should have known about or discovered the unusual conditions prior to beginning work on the project.

---

1. Bird-mouth cuts refer to triangular notched cuts on the slats that help connect the roof to the building frame. The depth of these cuts is significant because it affects the structural stability of the roof.

During the three-day court trial, respondent sought to amend its complaint to conform to the evidence that the additional work, caused by the unknown conditions, actually totaled $55,055.17.

The parties stipulated to a $4,000 settlement of appellant's counterclaim. The district court dismissed appellant's consumer-fraud claim with prejudice. Critically, the district court found that respondent encountered unknown conditions materially different from conditions commonly found in similar buildings. The district court concluded that the contract did not require a written notice of these unknown conditions and held that respondent's verbal report satisfied the obligation to report these conditions within 21 days after discovery. Respondent's motion to amend the complaint was denied, and the district court ordered appellant to pay respondent $51,680.94 for the extra work done.

### ISSUES

I. Did the district court err by concluding that the contract did not require written notice of the discovery of a concealed or unknown condition?

II. Was it an abuse of the district court's discretion to award respondent $51,680.94 in damages?

III. Did the district court's decision not to award appellant attorney fees represent an abuse of discretion?

### ANALYSIS

### I

 Appellant raises many different theories of error including the claim that respondent did not give adequate notice of

the concealed or unexpected conditions, and therefore appellant was not required to pay for the additional work caused by the concealed and unknown condition. Appellant also argues respondent should have known or discovered the unusual conditions prior to construction, and respondent did not provide acceptable documentation to make a claim for concealed and unknown conditions. But the foundation of the district court's ruling was its conclusion that the contract did not require respondent to notify appellant in writing of the discovery of an unknown or unusual condition.[2]

 Contract interpretation is subject to de novo review by this court. *Stiglich Constr., Inc., v. Larson,* 621 N.W.2d 801, 802 (Minn.App.2001), *review denied* (Minn. Mar. 27, 2001). Courts are to give the contractual language its plain and ordinary meaning. *Brookfield Trade Ctr. Inc. v. County of Ramsey,* 584 N.W.2d 390, 394 (Minn.1998). This court must read contract terms in the context of the entire document. *Porch v. Gen. Motors Acceptance Corp.,* 642 N.W.2d 473, 477 (Minn. App.2002).

At the heart of this dispute are two clauses in the "claims and disputes" subparagraphs of the standardized American Institute of Architects (AIA) construction contract: 201A, which was used by the parties. Subparagraph 4.3.1 of the contract defines a claim as:

[A] demand or assertion by one of the parties, seeking as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the Contract. The term "Claim" also in-

---

**2.** Respondent claims that appellant did not raise the notice issue in its post-trial motion. Although appellant's memorandum in support of its motion for a new trial or JNOV does not give an extensive treatment of the notice issue, the issue was raised and is properly before this court.

cludes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by written notice.

The AIA standard-form contract, in subparagraph 4.3.6, lays out the procedure to be followed if concealed or unknown conditions are discovered.

> If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before the conditions are disturbed and in no event no later that 21 days after first observance of the conditions. The architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in Contractor's cost of, or time required for, performance of any part of the work[.] * * * If the owner and the Contractor cannot agree on an adjustment in the Contract Sum * * * the adjustment shall be referred to the Architect for initial deter-

mination, subject to further proceedings pursuant to Paragraph 4.4.

Paragraph 4.4 requires the architect to review the claim and to attempt to foster agreement between the parties as to the additional costs required. If the parties cannot reach agreement, the contract empowers the architect to resolve the matter and issue a final written decision.

Although no reasons were given, the district court held that the contract did not require respondent to notify appellant in writing of any unusual conditions. The court found that respondent's crew discovered the conditions on May 22, 1998, and gave verbal notice that day to the architect, thereby fulfilling respondent's obligations under the contract.

▆ The record supports respondent's claim that it encountered concealed or unknown conditions and that these conditions substantially altered the time needed and costs necessary to complete the project. Respondent's witnesses testified that the condition of the roof was significantly different from what would be expected in a typical building of similar age. The architect hired by appellant stated that appellant's unwillingness to allow inspection of the entire roof before the project began led to the misconception about the roof and therefore the true condition of the roof was unknown.[3]

---

3. Appellant raises several arguments challenging the district court's findings that respondent encountered concealed or unknown conditions soon after it began work on the roof. Appellant claims that the roof was constructed much like other roofs of its genre and that the bird-mouth cuts should have been expected. Appellant also claims that even if the roof was in an unusual condition, respondent had ample opportunity to discover these unusual conditions during the pre-bid inspection and the pre-construction inspection that respondent was contractually obligated to perform. But the district court made factual findings on these issues and those

findings are not to be disturbed unless clearly erroneous and unsupported by reasonable evidence. Minn. R. Civ. P. 52.01, *Fletcher v. St. Paul Pioneer Press,* 589 N.W.2d 96, 101 (Minn.1999). Here, the record indicates that appellant's roof was not in the condition expected in a building of its genre. In fact, appellant's own architect felt that the depth of the cuts represented a concealed or unknown condition. Further, the record contains evidence that appellant's unwillingness to remove insulation prevented a proper inspection of the building. We cannot conclude that

■■■ Having concluded that the district court properly determined that respondent encountered unknown or concealed conditions, we must next determine whether the contract required written notice of such conditions. It is the cardinal rule of contract interpretation to give effect to the intentions of the parties as expressed in the whole of the document. *Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493 (Minn.1998). Phrases found in the contract should not be interpreted out of context, but rather given meaning in accordance with the obvious purpose of the contract as a whole. *Beehner v. Cragun Corp.*, 636 N.W.2d 821, 827 (Minn.App.2001).

Review of this matter is made difficult because there are few reported decisions addressing the requirements of subparagraph 4.3.6 directly. Nevertheless, we agree with the district court's interpretation of the contract and conclude that written notice of an unusual condition is not required.

The contract specifically distinguishes claims for unknown conditions from other claims that must be in writing. For example, subparagraphs 4.3.7 and 4.3.8 explicitly require a contractor who needs more time or funds to complete a project to make such a request in writing. This is in sharp contrast to subparagraph 4.3.6, which does not require written notice until after the architect has inspected the construction site and determined that concealed or unknown conditions exist.

At least one commentator has characterized subparagraph 4.3.6 of the standard AIA contract as more of an investigation tool rather than a claims provision. Justin Sweet, *Sweet on Contracts* 398 (1997). Although the reasoning underlying the paragraph's unique requirements is not clear,

its emphasis on quick investigation suggests this paragraph is meant to address possible design changes and false claims. *Id.*

The most recent incarnation of the AIA's standardized construction contract, completed in 1987, reflects a significant amplification of the notice requirement. Justin Sweet et al., *Sweet On Construction Industry Contracts: Major AIA Documents*, 414 (4th ed.1999). But the 1987 revision dropped any requirement that the notice be in writing. *Id.* The AIA's commentary suggests that some may wish to modify the contract to require written notice of a concealed or unknown condition. *Id.*

We conclude the contract here does not require written notice of a concealed or unknown condition. Paragraph 4.3.6 only requires notice be given within 21 days of discovery, and, unlike other subparagraphs in this contract, 4.3.6 does not require written notice. 4.3.6 shifts the written-notice requirement to the architect after an investigation is completed. Perhaps it would have been better had the parties amended the contract to include such a requirement, but those are not the facts before us. Accordingly, we affirm the district court's ruling.

## II

■■■ Next, both parties argue that the district court incorrectly awarded respondent $51,680.94 in damages. We apply an abuse-of-discretion standard of review when analyzing a district court's award of damages. *Phelps v. Commonwealth Land Title Ins. Co.*, 537 N.W.2d 271, 274 (Minn. 1995).

■■■ Appellant contends that respondent did not provide the documentation required by the contract to make a claim for

the district court's findings concerning the condition of the roof were clearly erroneous.

damages. But the paragraph appellant relies on pertains only to changes requested by the *owner*. This litigation arose from appellant's own refusal to pay respondent for extra work done in addressing the concealed condition of the roof that appellant claims was not authorized by the terms of the contract. Thus, appellant cannot argue that the extra work was done at its request.

■ Moreover, the record provides ample evidence to support the district court's damage award. Respondent's "change order request" sought an additional $51,680.94 for the extra time, labor, and material required to deal with the concealed conditions. In its request for more funds, respondent broke down in considerable detail the money spent in material and labor dealing with the concealed condition. It appears the district court adopted with little comment the damages sought by respondent. But based on this record, we cannot conclude the district court abused its discretion when awarding damages.

Conversely, respondent argues that the award of damages is too low. Respondent contends the evidence produced at trial showed that it spent $55,000 in dealing with the concealed conditions and the district court abused its discretion in refusing to allow it to amend its complaint to conform with this evidence.

■ The district court has broad discretion to grant or deny a motion to amend pleadings and will not be reversed absent a clear abuse of discretion. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). Motions to amend are to liberally granted if both parties agree to litigate the new claims. *Harry N. Ray v. First Natn'l. Bank of Pine City*, 410 N.W.2d 850, 854–55 (Minn.App.1987). But the record does not indicate that appellant ever consented to litigate the $55,000 amount.

In fact, the record suggests just the opposite; appellant objected to evidence suggesting that respondent was entitled to an additional $4,000. We affirm the district court's award of $51,680.94 in damages.

### III

■ Finally, appellant argues that the district court erred by denying its request for attorney fees. Appellant contends the terms of the contract require respondent to indemnify appellant for all attorney fees generated from all claims arising out of the negligence of respondent or its employees. Appellant ignores the fact that its claims are not based on negligence theories but are instead contractual in nature. The contract indemnification clause makes no mention of claims based on contractual disputes. Thus, we conclude the district court did not abuse its discretion in refusing to award attorney fees in this manner. *See Gully v. Gully*, 599 N.W.2d 814, 825 (Minn.1999) (appellate courts apply an abuse-of-discretion standard to the issue of attorney fees).

### DECISION

Because the construction contract provided for a specific process to be employed in the event of discovery of a concealed or unknown condition, the district court did not err in finding the contract did not require respondent to provide written notice within 21 days of discovery of structural defects. Moreover, the district court did not abuse its discretion in awarding damages or in refusing to award attorney fees.

**Affirmed.**