**IN THE COURT OF APPEALS OF IOWA**

No. 20-0145
Filed April 15, 2020

**IN THE INTEREST OF T.W.,**
**Minor Child,**

**M.H., Father,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Madison County, Brendan Greiner, District Associate Judge.

　　A father appeals the termination of his parental rights. **AFFIRMED.**

　　John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant father.

　　Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

　　Shireen Carter, Norwalk, attorney and guardian ad litem for minor child.

　　Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**MAY, Judge.**

A father appeals from the termination of his parental rights to his child, T.W. He argues (1) the State failed to satisfy the statutory grounds authorizing termination, (2) termination is not in T.W.'s best interest, (3) his bond with T.W. should preclude termination, and (4) he should be given additional time to work toward reunification.

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

We generally use a three-step analysis to review the termination of parents' rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine whether: (1) grounds for termination have been established, (2) termination is in the children's best interests, and (3) we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. Finally, we consider any additional arguments raised by the father.

The father claims the State failed to satisfy the statutory grounds authorizing termination. The juvenile court found grounds for termination under Iowa Code section 232.116(1)(e) and (h) (2019). When, as here, the juvenile court terminates on multiple statutory grounds, we may affirm on any ground supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on section

232.116(1)(h). Section 232.116(1)(h) authorizes termination of a parent's parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father only challenges the fourth element. He contends: "The State has not proven by clear and convincing evidence that T.[W.] would suffer some sort of adjudicatory harm if he were returned to his father's care and custody and would he be able and willing to respond to additional services and would additional time benefit the father if those services were offered."[1]

But, to satisfy section 232.116(1)(h)(4), the State was only required to prove T.W. could not be safely returned to the father at the time of the termination hearing. That is how our supreme court interpreted section 232.116(1)(h)(4) in

---

[1] To the extent the father attempts to challenge whether the State made reasonable efforts to facilitate reunification, his argument is not sufficiently developed for our review. *See In re K.M.*, No. 19-1637, 2020 WL 110408, at *3 n.6 (Iowa Ct. App. Jan. 9, 2020); *In re O.B.*, No. 18-1971, 2019 WL 1294456, at *2 (Iowa Ct. App. Mar. 20, 2019).

2018,[2] 2017,[3] 2016,[4] 2014,[5] and 2010.[6]  So we believe the "safely returned" standard is binding on this intermediate appellate court.  *See In re C.L.C. Jr.*, 798 N.W.2d 329, 335 n.1 (Iowa Ct. App. 2011) (noting "as an intermediate appellate court we must follow the precedents of our supreme court").  Indeed, our court applies it on a regular basis.  *See, e.g.*, *In re M.M.*, No. 20-0058, 2020 WL 1310254, at *2 (Iowa Ct. App. Mar. 18, 2020) ("For all of these reasons, we conclude there is clear and convincing evidence in the record to show the children could not be safely returned to the mother's care.  We conclude the mother's parental rights were properly terminated under section 232.116(1)(f) and (h)."); *In*

---

[2] *A.S.*, 906 N.W.2d at 473 ("We also conclude that there is clear and convincing evidence that at the time of the termination hearing, the child could not be safely returned to A.S.'s custody.").

[3] *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) ("Accordingly, we find clear and convincing evidence that custody of L.M. could not be returned to [the parent] at the time of the termination hearing."); *see id.* (noting "[t]he State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent" (citation omitted)).

[4] *In re M.W.*, 876 N.W.2d 212, 223 (Iowa 2016) ("Based on our de novo review of the record, we conclude there is clear and convincing evidence that each of the four requirements of Iowa Code section 232.116(1)(h) have been met for both M.W. and Z.W., and the grounds for termination were proven. . . .  Finally, there is clear and convincing evidence in the record that at the time of the termination hearing, the children could not be safely returned to the custody of R.W.").

[5] *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("The record thus shows A.M. could not be returned to the care of her parents at the time of the hearing.  We find clear and convincing evidence that grounds for termination of [the parents'] parental rights were established under Iowa Code section 232.116(1)(h)."); *see id.* ("It is significant to us that neither the third-party service providers nor the [guardian ad litem] believed A.M. could be safely returned to her parents at the time of trial.").

[6] *D.W.*, 791 N.W.2d at 707 ("Section 232.116(1)(h) provides that termination may be ordered when there is clear and convincing evidence that a child under the age of three who has been adjudicated a [child in need of assistance] and removed from the parents' care for at least the last six consecutive months cannot be returned to the parents' custody at the time of the termination hearing. . . .  The record does not provide any evidence that D.W. could safely be returned home with A.W. at the time of the termination hearing." (citation omitted)).

*re A.H.*, No. 19-2024, 2020 WL 1049846, at *3 (Iowa Ct. App. Mar. 4, 2020) ("We conclude the children could not be safely returned to the father's care. There is clear and convincing evidence to support termination of the father's parental rights under section 232.116(1)(h)."); *In re C.Y.*, No. 19-1806, 2020 WL 1049541, at *2 (Iowa Ct. App. Mar. 4, 2020) ("Based on our de novo review of the record, we conclude there is clear and convincing evidence the child could not be safely returned to the father's care at the time of the termination hearing. . . . We conclude clear and convincing evidence supports terminating the father's parental rights under Iowa Code section 232.116(1)(h)."); *In re M.H.*, No. 19-1195, 2020 WL 110391, at *2–3 (Iowa Ct. App. Jan. 9, 2020) (noting "[t]he mother challenges the fourth element [of section 232.116(1)(h)], claiming the child can be immediately returned to her custody and care" and concluding "clear and convincing evidence shows the child cannot be safely returned to her care at the present time"); *In re P.H.*, No. 19-1115, 2019 WL 5791037, at *2 (Iowa Ct. App. Nov. 6, 2019) ("[The mother] does not address the fourth element of subsection (h), that the child cannot be returned 'at the present time.' . . . Even if [the mother] had contested this element, the record supports the juvenile court's decision that P.H. could not be safely returned to her mother's care.").

We acknowledge, though, that many Iowa appellate decisions have interpreted section 232.116(1)(h)(4) to require proof that returning the child would create a risk of "adjudicatory harm." *See, e.g.*, *In re A.R.C. III*, No. 13-0786, 2013 WL 3458222, at *5 (Iowa Ct. App. July 10, 2013). By this, our cases have meant "some harm which would justify the adjudication of the child as a child in need of assistance," a phrase that currently appears in Iowa Code section

232.102(6)(a)(2). *See, e.g.*, *In re K.S.*, No. 16-1258, 2016 WL 5485103, at *1 (Iowa Ct. App. Sept. 28, 2016); *accord In re M.S.*, 05-0667, 2005 WL 1398497, at *3 (Iowa Ct. App. June 15, 2005); *In re C.N.G.*, No. 03-1717, 2003 WL 22900901, at *4 (Iowa Ct. App. Dec. 10, 2003). Thus, under the "adjudicatory harm" standard, section 232.116(1)(h)(4) is satisfied only if the child "cannot be returned to the parental home because the definitional grounds of a child in need of assistance, Iowa Code [section] 232.2(6), exist." *In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988).

It is not entirely clear whether—as a practical matter—the "adjudicatory harm" standard is different from the "safely returned" standard. Many children become a child in need of assistance (CINA) because of safety issues involving a parent. So, there is likely substantial overlap between the categories of (1) children who cannot be safely returned to a parent and (2) children who, if returned, would meet the definition of a CINA.

But we need not decide whether the two standards are materially different or—if so—which is better. We believe the supreme court has resolved the issue through its recent decisions.[7] Those decisions teach us that section

---

[7] Although earlier supreme court cases employed the "adjudicatory harm" standard, *see, e.g.*, *In re M.M.*, 483 N.W.2d 812, 815–16 (Iowa 1992), we follow the court's most recent guidance. *See Dix v. Casey's Gen. Stores, Inc.*, No. 18-1464, 2020 WL 105087, at *4 (Iowa Ct. App. Jan. 9, 2020) (citing and following the supreme court's most recent cases); *State v. Ritenour*, No. 15-0038, 2016 WL 3269551, at *15 (Iowa Ct. App. June 15, 2016) (McDonald, J., specially concurring) (referencing and applying "[t]he supreme court's most recent decision"); *State v. Hayslip*, No. 00-0878, 2001 WL 194886, at *2 (Iowa Ct. App. Feb. 28, 2001) (referencing and applying "our supreme court's most recent *published* pronouncement on [the] subject"); *see also Patterson v. PowderMonarch, LLC*, 926 F.3d 633, 637 (10th Cir. 2019) ("In applying Colorado law, we 'must follow the most recent decisions of the state's highest court.'" (citation omitted)); *Eastern*

232.116(1)(h)(4) is satisfied only if "the child could not be safely returned" to the parent "at the time of the termination hearing." *See A.S.*, 906 N.W.2d at 473.

So we apply the "safely returned" standard here. And we find it is satisfied. The father's petition on appeal concedes that "[a]dmittedly because [the father] has unresolved substance abuse and domestic violence issues he cannot presently take custody of T.[W]." Following our de novo review, we agree with the father's assessment. The child could not be safely returned at the time of the termination hearing. Section 232.116(1)(h)(4) is satisfied.

We further note that, even if risk of "adjudicatory harm" were required, we would reach the same conclusion. As noted, "adjudicatory harm" means the child could qualify as a CINA if returned to the parent. Under section 232.2(6)(c), (n), and (p), a "[c]hild in need of assistance"—or CINA—includes any

> [u]nmarried child:
>     . . . .
>     c. Who has suffered or is imminently likely to suffer harmful effects as a result of any of the following:
>     (1) Mental injury caused by the acts of the child's parent, guardian, or custodian.
>     (2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.

---

*Shawnee Tribe of Oklahoma v. United States*, 598 F.3d 1326, 1327 n.1 (Fed. Cir. 2010) (noting when "decisions are inconsistent, we are obligated to follow the court's most recent decision"); *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 884 (10th Cir. 2006) ("Because this determination necessarily involves interpretation of Oklahoma law, we apply the most recent pronouncement of the Oklahoma Supreme Court."); *United States v. Hardy*, 77 M.J. 438, 441 n.5 (C.A.A.F. 2018) ("When confronted with conflicting precedents, we generally follow the most recent decision."); *State v. Berry*, 506 S.W.3d 357, 362 n.5 (Mo. Ct. App. 2016) ("[T]he Court of Appeals is constitutionally bound to follow the most recent controlling decision of the Supreme Court of Missouri."(alteration in original) (citation omitted)); *Yarbrough v. State*, 57 S.W.3d 611, 618 (Tex. App. 2001) ("Being required to follow the most recent decision of the Court of Criminal Appeals directly on point . . . ." (footnote omitted)).

. . . . [or]

n. Whose parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care.

. . . . [or]

p. Whose parent, guardian, custodian, or other adult member of the household in which a child resides does any of the following: unlawfully uses, possesses, manufactures, cultivates, or distributes a dangerous substance in the presence of a child; or knowingly allows such use, possession, manufacture, cultivation, or distribution by another person in the presence of a child; possesses a product with the intent to use the product as a precursor or an intermediary to a dangerous substance in the presence of a child; or unlawfully uses, possesses, manufactures, cultivates, or distributes a dangerous substance specified in subparagraph (2), subparagraph division (a), (b), or (c), in a child's home, on the premises, or in a motor vehicle located on the premises.

(1) For the purposes of this paragraph, "in the presence of a child" means in the physical presence of a child or occurring under other circumstances in which a reasonably prudent person would know that the use, possession, manufacture, cultivation, or distribution may be seen, smelled, ingested, or heard by a child.

(2) For the purposes of this paragraph, "dangerous substance" means any of the following:

. . . .

(b) Methamphetamine, its salts, isomers, or salts of its isomers.

When a parent is actively addicted to methamphetamine while caring for children, those children may be at risk for adjudicatory harm under section 232.2(6)(c), (n), and (p). *See, e.g.*, *In re P.D.*, No. 19-1824, 2019 WL 6894420, at *1 (Iowa Ct. App. Dec. 18, 2019) ("Given the mother's continued use of methamphetamine, the child would be at risk of adjudicatory harm."); *see also In re C.H.*, No. 16-0144, 2016 WL 1129311, at *3 (Iowa Ct. App. Mar. 23, 2016) ("[W]e agree with the district court the evidence established that C.H.'s adjudication under paragraph (c)(2) should remain, as there continues to be concerns regarding the volatile relationship between the parents and their subsequent vulnerability to relapsing on methamphetamine."); *In re J.C.*, No. 13-0597, 2013 WL 3291867, at

*2 (Iowa Ct. App. June 26, 2013) ("A parent using methamphetamine while caring for a child is known to be a significant danger and pose great harm to that child.").

Here, the father admitted to consistent "daily" methamphetamine use since he was eighteen. He is now in his thirties. And he was arrested for possession of methamphetamine only two months prior to the termination hearing. Moreover, he has a history of domestic abuse. Indeed, the father properly concedes that, because of his "unresolved substance abuse and domestic violence issues[,] he cannot presently take custody of T.[W]." And the juvenile court found the father "has three serious unresolved impairments to reunification: domestic violence, substance abuse, and untreated mental health." Ultimately, the court concluded the father "continues to struggle with a severe addiction to methamphetamine and [T.W.] will be placed in adjudicatory harm if he is placed in [the father]'s custody." We agree, and we reaffirm our conclusion that section 232.116(1)(h)(4) is satisfied.

Next, we consider whether termination is in T.W.'s best interest. In considering T.W.'s best interest, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive the child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

We conclude termination is in T.W.'s best interest. By the father's own admission, he has unresolved methamphetamine-abuse and domestic-abuse issues. These issues are inherently incompatible with safe parenting. *See In re*

*K.F.*, No. 19-1828, 2020 WL 375951, at *2 (Iowa Ct. App. Jan. 23, 2020) (finding termination to be the child's best interest when a parent has an unresolved drug addiction and there is history of domestic abuse between parents). And safety is a "defining element[]" of our best-interest analysis. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., specially concurring).

We complete our three-step analysis by considering if section 232.116(3) should be applied to preclude termination. "[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *See A.S.*, 906 N.W.2d at 476. Even if the parent proves an exception could apply, we are not required to decline termination. *A.M.*, 843 N.W.2d at 113. We exercise our discretion, "based on the unique circumstances of each case and the best interests of the child," to determine whether the parent-child relationship should be saved. *Id.* (citation omitted).

The father argues section 232.116(3)(c) applies. Section 232.116(3)(c) permits the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." But the juvenile court did not "believe any parent-child bond exist[ed] between [the father] and [T.W.]." We defer to the juvenile court's finding. *See M.W.*, 876 N.W.2d at 219. So we decline to apply section 232.116(3)(c) to forgo termination.

Finally, we address the father's request for "additional time so that when he has addressed his substance abuse and domestic violence issues and has a

stable living environment he can take custody of his child."[8]  The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  Iowa Code § 232.104(2)(b).  While the father makes a general statement about conditions he believes could change with additional time, he does not provide any explanation as to how he would make these changes.  We will not force T.W. to wait in limbo when the father may or may not turn over a new leaf.  *See D.W.*, 791 N.W.2d at 707 ("We do not 'gamble with the child[]'s future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (citation omitted)).

The juvenile court was correct in terminating the father's parental rights.

**AFFIRMED.**

Vaitheswaran, P.J., concurs; Doyle, J., concurs specially.

---

[8] We question whether the father preserved error as to this claim.  A parent cannot request additional time to work toward reunification for the first time on appeal. *See In re A.U.*, No. 13-0599, 2013 WL 2646971, at *3 (Iowa Ct. App. June 12, 2013) (explaining traditional error-preservation rules apply to termination-of-parental-rights proceedings).  But we interpret his request at the termination hearing for the court to not terminate and instead keep the CINA case open as a request for additional time.

**DOYLE, Judge** (specially concurring).

I concur with the majority's disposition but take this opportunity to comment on the conundrum faced by the court—has the supreme court supplanted the "adjudicatory harm" standard with a more relaxed "safely returned" standard in applying the fourth element of Iowa Code section 232.116(1)(h)? Without deciding whether the two "standards" are materially different, the majority concludes the supreme court has resolved the issue by employing the "safely returned" language in its recent decisions. But the supreme court has not overruled its cases, or our cases, employing the "adjudicatory harm" standard, nor has it explained the shift to the "safely returned" language. So I disagree that the issue is resolved. In any event, I believe the "safely returned" standard is merely judicial shorthand for the "adjudicatory harm" standard, and, under either, the State must show that the child cannot be returned to the parent's custody without risk of adjudicatory harm.

The fourth element of section 232.116(1)(h) requires the State to prove "[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parent as provided in section 232.102 at the present time."[9] Iowa Code § 232.116(1)(h)(4). What does this mean? Central to the determination is section 232.102(6). It provides:

> Whenever possible the court should permit the child to remain at home with the child's parent . . . . Custody of the child should not be transferred unless the court finds there is clear and convincing evidence that:
> . . . .
> (2) The child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance.

---

[9] "At the present time" means "at the time of the termination hearing." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

Iowa Code § 232.102(6(a)(2). Section 232.2(6) defines "child in need of assistance." So the fourth element is met when the child cannot be returned to the parental home because the definitional grounds of a child in need of assistance, under section 232.2(6), exist at the time of the termination hearing. *In re K.L.C.*, 372 N.W.2d 223, 227 (Iowa 1985) (finding termination may only take place when the child cannot be returned to the parental home because definitional grounds of a "child in need of assistance" still exist); *see also In re M.M.*, 483 N.W.2d 812, 815-16 (Iowa 1992); *In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988) (discussing same language applicable here); *In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995) (discussing section 232.116(1)(g)(4), now renumbered 232.116(1)(h)(4)). "If any one of the grounds listed in section 232.2(6) can be proven by clear and convincing evidence, there is a sufficient basis for termination." *In re R.R.K*, 544 N.W.2d at 277 (citing *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990)).

Recently, in considering element four of section 232.116.1(h), we said in a published opinion:

> This section requires the State to prove by "clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h)(4). "[A] child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication." *In re M.M.,* 483 N.W.2d 812, 814 (Iowa 1992).

*In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016).[10]  This language, or similar language, has been used by this court many times since then. *See, e.g.*, *In re K.L.*,

---

[10] "The threat of probable harm will justify termination, and the perceived harm need not be the one that supported the child's initial removal from the home."

No. 20-0012, 2020 WL 1049874, at *1 (Iowa Ct. App. Mar. 4, 2020) ("A child cannot be returned to a parent's custody if doing so would expose the child to any harm amounting to a new CINA adjudication."); *In re P.C.*, No. 19-1387, 2020 WL 110435, at *2 (Iowa Ct. App. Jan. 9, 2020) ("[T]he child cannot be returned to the [parent]'s custody without risk of adjudicatory harm").

As pointed out by the majority, in applying the fourth element of section 232.116(1)(h), our courts have articulated a "safely returned"[11] standard for over a decade. But I do not view this as a change in the requisite burden of proof. Other than renumbering, the statutory framework has not changed since the supreme court held there must be clear and convincing evidence "that the child will suffer harm specified in section [232.2(6)] if returned to the parent." *K.L.C.*, 372 N.W.2d at 227. And bolstering my view that the "safely returned" standard is just judicial shorthand for the "adjudicatory harm" standard is *In re Dameron*, where the supreme court said: "[W]e find there is clear and convincing evidence that the Dameron children cannot be returned to their parents. *Stated otherwise*, the evidence convinces us that the children will suffer harm if returned." *In re Dameron*, 306 N.W.2d 743, 747 (Iowa 1981) (emphasis added). Lastly, the supreme court has not overruled cases employing the "adjudicatory harm" standard, nor has it indicated the "safely returned" standard is different than the "adjudicatory harm" standard.

---

*M.M.,* 483 N.W.2d at 814; *see In re C.M.T.,* 433 N.W.2d 55, 56 (Iowa Ct. App. 1988).

[11] The language varies from "could not be safely returned," "cannot be safely returned," "could not be returned," and "cannot be returned."

But even if there is a material difference in requisite proof under the two "standards," it would make no difference here. The State met its burden under either standard. As the majority notes, the father's petition on appeal concedes that "[a]dmittedly because [the father] has unresolved substance abuse and domestic violence issues he cannot presently take custody of T.[W]." And a de novo review of the record reveals that the State did indeed prove by clear and convincing evidence that T.W. could not be returned to the father's custody without risk of adjudicatory harm as defined in section 232.2(6). I therefore agree with the majority that a statutory ground authorizing termination was satisfied.