STATE OF MAINE
CUMBERLAND, ss.
SUPERIOR COURT
CIVIL ACTION
Docket No. RE-2022-013



SUSAN A. CHAPDELAINE a/k/a )
SUSAN A. CAMPBELL, )
 )
  Plaintiff, )
 )
  v. )
 )
48 CEDAR BEACH ROAD II, LLC, )
NATASHA DURHAM, WARREN )
CONSTRUCTION GROUP, INC., )
and CARROLL ASSOCIATES )
LANDSCAPE ARCHITECTS, )
 )
  Defendants. )

**ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT**

REC'D CUMB CLERKS OFC
JAN 6 '23 AM10:27

This matter is before the Court on a Motion for Partial Summary Judgment brought by Defendant/Crossclaim Defendant Carroll Associates Landscape Architects ("Carroll Associates") against Defendants/Crossclaim Plaintiffs Natasha Durham and 48 Cedar Beach Road II, LLC (collectively, "Crossclaim Plaintiffs"). For the following reasons, the Court denies the motion.

## I.   Background

The following is drawn from the parties' statements of material facts.[1] Plaintiff Susan A. Chapdelaine a/k/a Susan A. Campbell is an individual holding record title to real property on Bailey Island, Cumberland County, Maine. (Carroll Supp'g S.M.F. ¶ 1.) 48 Cedar Beach Road II, LLC is a Maine limited liability company holding record title to real property at 48 Cedar Beach Road on Bailey Island ("the Property"). (Carroll Supp'g S.M.F. ¶ 2.) Ms. Durham is the sole member of 48 Cedar Beach Road II, LLC. (Durham

---

[1] The parties frequently attempt to qualify statements of material fact without citation. Each of those statements is deemed admitted without qualification. M.R. Civ. P. 56(h)(2), (4).

Entered on the Docket: 1/10/2023

Add'l S.M.F. ¶ 1.) Carroll Associates is a Maine business owned by Patrick Carroll with a place of business in Portland, Cumberland County, Maine. (Carroll Supp'g S.M.F. ¶ 4.)

When the Property was listed for sale in 2017, Ms. Durham owned the abutting lot at 18 Cragmoor Lane. (Durham Add'l S.M.F. ¶¶ 5, 7.) Ms. Durham purchased the Property, which appealed to her because it was private and wooded. (Durham Add'l S.M.F. ¶ 8.) She planned to build a home on the Property, and construction was set to begin in the fall of 2020. (Durham Add'l S.M.F. ¶¶ 9-10.)

Plans for the home were designed to optimize the position of the home with respect to the ocean and the forest between the home and Cedar Beach Road. (Durham Add'l S.M.F. ¶ 11.) Ms. Durham did not want site work to impact the mature trees on the Property. (Durham Add'l S.M.F. ¶ 13.)

In February 2020, Mr. Carroll received Ms. Durham's contact information. (Carroll Supp'g S.M.F. ¶ 5.) On March 1, 2020, Mr. Carroll wrote to Ms. Durham by email to express his interest in having Carroll Associates serve as the landscape architect for the construction of Ms. Durham's home ("the Project"). (Carroll Supp'g S.M.F. ¶¶ 5-6.) In the same email, Mr. Carroll requested a meeting and suggested that a "short agreement" should be prepared regarding the scope of the Project and fee arrangement. (Carroll Supp'g S.M.F. ¶ 6; Durham Add'l S.M.F. ¶ 35.) Ms. Durham hired Carroll Associates to oversee the landscape architecture plans for the Project. (Durham Add'l S.M.F. ¶ 4.) Carroll Associates began working on the Project after March 1, 2020, with Ms. Durham's authority. (Carroll Supp'g S.M.F. ¶ 7.)

On or about March 16, 2020, Mr. Carroll prepared a contract for landscape architectural services between Carroll Associates and Ms. Durham ("the Draft Contract"). (Carroll Supp'g S.M.F. ¶ 8.) Mr. Carroll and Ms. Durham dispute whether and when the Draft Contract was sent to Ms. Durham. (Carroll Supp'g S.M.F. ¶ 9; Durham Resp. S.M.F.

¶ 9.) Lauren Rosenberg, the principal architect on the Project, testified that she received and reviewed the Draft Contract in the summer of 2020. (Carroll Supp'g S.M.F. ¶ 9.)

Carroll Associates worked on the Project until December 2020. (Carroll Supp'g S.M.F. ¶ 11.) Carroll Associates issued four invoices to Ms. Durham for professional services rendered from March 1, 2020, through September 14, 2020, which Ms. Durham paid in full. (Carroll Supp'g S.M.F. ¶ 10.)

To construct Ms. Durham's home, some of the spruce trees on the Property had to be cut down. (Carroll Supp'g S.M.F. ¶ 15.) Ms. Durham walked the Property with Peter Warren of Defendant Warren Construction Group, Inc. ("Warren Construction") and Mr. Carroll before site work began to review the site plan and trees to be removed. (Durham Add'l S.M.F. ¶ 12.) All parties were aware of the importance of the mature trees to Ms. Durham. (Durham Add'l S.M.F. ¶ 14.)

Subcontractors of Warren Construction were hired to remove trees. (Durham Add'l S.M.F. ¶ 15.) After the trees were cut, it was discovered that several spruce trees on the Property and Ms. Chapdelaine's property were wrongly cut down ("the Incident"). (Carroll Supp'g S.M.F. ¶ 16.) At least thirty mature trees were erroneously removed from the Property, as well as seventeen trees from Ms. Chapdelaine's neighboring property. (Durham Add'l S.M.F. ¶ 17.) Ms. Durham described the Incident as "human error" and an "honest mistake." (Carroll Supp'g S.M.F. ¶ 25.)

Following the Incident, Mr. Warren and Mr. Carroll represented to Ms. Durham that they would cure the mistake and submit claims to their insurance companies. (Durham Add'l S.M.F. ¶¶ 19-20.) Carroll Associates placed its insurer on notice of a potential claim by Ms. Durham. (Carroll Supp'g S.M.F. ¶ 12.)

While submitting the claim to his insurer, Mr. Carroll became aware that the Draft Contract was not executed. (Carroll Supp'g S.M.F. ¶ 12.) On October 17, 2020, Mr. Carroll

wrote to Ms. Durham, and explained that the Draft Contract had either been misplaced or not executed. (Carroll Supp'g S.M.F. ¶ 13; Durham Add'l S.M.F. ¶ 22.) He attached a copy of the Draft Contract and asked Ms. Durham to sign it.[2] (Carroll Supp'g S.M.F. ¶ 13; Durham Add'l S.M.F. ¶ 22.)

Mr. Carroll recognized that some changes could be made to reflect changes to the Project and offered to make changes or prepare a new contract. (Carroll Supp'g S.M.F. ¶ 13.) On October 22, 2020, Ms. Durham's assistant returned the contract, signed by Ms. Durham, with no changes ("the Contract"). (Carroll Supp'g S.M.F. ¶ 14.) No additional consideration was provided to Ms. Durham for executing the Contract. (Durham Add'l S.M.F. ¶ 33.) Ms. Durham confirmed that she signed the Contract. (Carroll Supp'g S.M.F. ¶ 23; Durham Add'l S.M.F. ¶ 24.)

The Contract outlined the scope of work and fee arrangement and referenced attached documents titled "standard fee schedule" and "standard conditions of agreement" ("the Standard Conditions"). (Durham Add'l S.M.F. ¶¶ 25-27.) The Standard Conditions are not separately signed or dated. (Durham Add'l S.M.F. ¶ 30.) Article 6(c) of the Standard Conditions ("the Limitation of Liability Clause") reads:

> Client understands and acknowledges that the design and construction process for this Project poses certain risks and benefits to both [Carroll Associates] and Client. Client further understands and acknowledges that the amount of risk that [Carroll Associates] can accept is tied, in part, to the amount of compensation received for services rendered. [Carroll Associates's] fee for the services offered is based on Client's agreement to limit [Carroll Associates's] liability as described below. Client further acknowledges that were it not for this promise to limit liability, Carroll Associates [sic] compensation would need to increase to address the risks posed by this project.
>
> Client, therefore, voluntarily agrees that, to the fullest extent permitted by law, Carroll Associates' [sic] total liability to Client for any

---

[2] Paragraph 23 of Ms. Durham's Additional Statement of Material Facts is not adequately supported by the portion of the record to which it cites and is properly controverted by Carroll Associates. It is, therefore, not part of the record on summary judgment.

and all injuries, claims, liabilities, losses, costs, expenses or damages whatsoever arising out of or in any way related to the Project or this Agreement from any cause or causes including, but not limited to, negligence, errors, omissions or breach of contract, shall not exceed $50,000, or 100% of the total compensation received by Carroll Associates under this Agreement, whichever is greater. This limitation of liability shall apply to Client's direct claims and claims arising from third parties.

(Carroll Supp'g S.M.F. ¶ 21.) Ms. Durham was not aware of the Limitation of Liability Clause when she signed the Contract. (Durham Add'l S.M.F. ¶ 32.) The provision was not raised during early discussions regarding the Project or thereafter. (Durham Add'l S.M.F. ¶ 33.)

Ms. Chapdelaine filed suit on January 6, 2022, asserting a claim for trespass related to the Incident against Warren Construction, Ms. Durham, and Carroll Associates. (Carroll Supp'g S.M.F. ¶ 32.) Ms. Durham asserted crossclaims against Carroll Associates and Warren Construction for negligence, breach of contract, trespass, and common law trespass related to the Incident. (Carroll Supp'g S.M.F. ¶ 33.)

Carroll Associates seeks a summary judgment regarding the enforceability of the Limitation of Liability Clause with regards to all crossclaims asserted against it by Crossclaim Plaintiffs.

## II. Legal Standard

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer demonstrates that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A contested fact is "material" if it could affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A "genuine issue" of material fact exists if a factfinder must "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

The court considers the record in the light most favorable to the party objecting to the grant of summary judgment. *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646; *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). To controvert an opposing party's statement of fact, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2). The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Est. of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## III.  Discussion

Crossclaim Plaintiffs oppose summary judgment on several grounds: (1) the Contract is not binding; (2) the Limitation of Liability Clause is ambiguous; (3) the Contract violates the Home Construction Contracts Act, 10 M.R.S. §§ 1486-1490 (2022); (4) the Limitation of Liability Clause violates the Maine Unfair Trade Practices Act, 5 M.R.S. §§ 205-A to 214 (2022); and (5) the Limitation of Liability Clause is unenforceable at common law.

### A. Validity of the Contract

Ms. Durham argues that the Contract is unenforceable to the extent it is inconsistent with the parties' original agreement because it was executed after the Incident and no additional consideration was given to Ms. Durham in connection with her signature on the Contract. The fact that a written agreement was not executed until after performance or breach does not, alone, affect the validity of the executed contract. 4

Timothy Murray, Corbin on Contracts § 22.8 (2023). However, the lack of additional consideration to support the Contract may render it unenforceable.

It is undisputed that the parties operated under some agreement concerning the provision of landscape architecture services prior to execution of the Contract. The terms of that prior agreement, however, are disputed. Ms. Durham contends that the Limitation of Liability Clause and other Standard Conditions were not part of the parties' agreement prior to the Incident.

Ordinarily, evidence of prior negotiations or a prior agreement cannot be offered to contradict the terms of a subsequent written contract. *See* Restatement (Second) of Contracts §§ 213, 215 (Am. L. Inst. 1981). However, such evidence may be admissible to demonstrate a lack of consideration supporting the subsequent written agreement. Restatement (Second) of Contracts § 214 (Am. L. Inst. 1981).

Without an undisputed statement of the terms of the parties' prior agreement, the Court cannot determine whether the Contract was a modification of the prior agreement, or whether that modification required additional consideration to be binding. *Compare Roy v. Danis*, 553 A.2d 663, 664 (Me. 1989) ("Although any contract may be modified by a subsequent agreement, the new agreement must comply with the requirements of a valid contract."), *with Patterson v. PowderMonarch, LLC*, 926 F.3d 633, 637-639 (10th Cir. 2019) (holding no additional consideration needed to support exculpatory provision signed two days after initial transaction, but suggesting that additional consideration may have been required if a longer time had passed), *and* Restatement (Second) of Contracts § 89 (Am. L. Inst. 1981) ("A promise modifying a duty under a contract not fully performed on either side is binding (a) if the modification is fair and equitable in view of circumstances not anticipated by the parties when the contract was made . . . ."). In short,

the undisputed facts do not conclusively establish that the Contract and the Standard Terms are enforceable against Ms. Durham.

Because the Court has determined that Carroll Associates is not entitled to summary judgment, it need not proceed to Crossclaim Plaintiffs' remaining arguments.

## IV. Conclusion

For the foregoing reasons, the Court denies Carroll Associates's Motion for Partial Summary Judgment.

The entry is:

Defendant/Crossclaim Defendant Carroll Associates Landscape Architects's Motion for Partial Summary Judgment is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _____1/5/23_____

_____
Mary Gay Kennedy, Justice
Maine Superior Court